UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| TIMOTHY AUSTIN, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| v. | ) | No. 2:13 CV 221 |
| SUPERINTENDENT, | ) |  |
| Respondent. | ) |  |

## OPINION AND ORDER

Timothy Austin, a *pro se* prisoner, filed a habeas petition under 28 U.S.C. § 2254 challenging a prison disciplinary proceeding. (DE #1.) In WCC #13-03-0074, a hearing officer found Austin guilty of attempted trafficking. (DE #7-8 at 1.) The charge was initiated on February 28, 2013, when Correctional Officer M. Spoon wrote a conduct report stating as follows:

> On Feb 28, 13 at approx. 10:00 AM while I Ofc Spoon was shaking down the crawl space at the Gary Parole Office, Gary, IN. I Ofc Spoon found 5 packs of Bugler cigarette papers, 1 ziploc bag that appears to have tobacco in it, 2 ziplock bags filled with more ziplock bags in it. Offender Austin, Timothy #20967 was assigned to this area (crawl space) as his work assignment.

(DE #7-1.)

On March 7, 2013, Austin was formally notified of the charge and given a copy of the conduct report. (DE #7-1; DE #7-2.) He pled not guilty, declined the assistance of a lay advocate, did not request any physical evidence, and requested witness statements from fellow inmates Brian Rhodes, Adam Vigil, and David Armentrout. (DE #7-2.) Statements were obtained from all three witnesses prior to the hearing. Vigil stated as

follows: "Every time Mr. Austin went into the crawl space he was supervised by a C/O. Other then that I know nothing about all that other stuff." (DE #7-3). Rhodes stated,"I don't think that Austin, Timothy had nothing to do with what he's being accused of. I worked with him (Austin) but [was] never around him." (DE #7-4.) Armentrout stated, "I never saw anyone in the crawl space but I know Tim was the one that I was told had went down there." (DE #7-5.)

After a postponement, a hearing was held on March 25, 2013. (DE #7-8.) Austin made the following statement: "I wasn't working in the crawl space I was working above ground."(*Id.*) Based on the evidence, the hearing officer found him guilty. (*Id.*) As a result he lost 60 days of earned-time credits, among other sanctions. (*Id.*) His administrative appeals were denied. (DE #7-9 to DE #7-11.)

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In his first two claims, Austin argues that he was denied the opportunity to call witnesses. (DE #1 at 2-3.) A prisoner has a limited right to present witnesses and evidence in his defense, consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless, unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011).

Here, Austin claims that he was denied the opportunity to obtain statements from prison staff, who could have provided more information about his work assignments. (DE #8 at 3.) However, the record reflects that at screening Austin requested statements from only three witnesses; those statements were obtained and considered by the hearing officer. (DE #7-2 to 7-5.) He cannot fault the hearing officer for failing to consider evidence he did not properly request. *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). Nor has he made the necessary showing of prejudice. It appears Austin takes issue with Officer Spoon's phrasing in the conduct report that he

was "assigned" to the crawl space, and wanted staff to explain that the crawl space was not his official work station. Even if he could have obtained such testimony, it would not have exculpated him from the charge. The key issue was whether Austin had access to the crawl space through his prison job, and he acknowledges as much in his filings. (DE #1 at 3; DE #8 at 3.) The statements of his own witnesses also confirmed that Austin had been in the crawl space. (DE #7-3 to 7-5.) Thus, his argument is unavailing.

He also suggests that the hearing officer improperly relied on "hearsay" statements and denied him the opportunity to cross-examine Officer Spoon. This was not a formal criminal proceeding, and the hearing officer was not required to follow the formal rules of evidence, or permit Austin to confront or cross-examine adverse witnesses. *Piggie*, 342 F.3d at 666 (inmate had no right to cross-examine or confront adverse witnesses); *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000) (formal rules of evidence do not apply at prison disciplinary proceeding). Nor does Austin explain how a cross-examination of Officer Spoon would have revealed evidence exculpating him from the charge. *See Jones,* 637 F.3d at 847; *Meeks*, 81 F.3d at 721. Again his complaint appears to be that he was not technically "assigned" to the crawl space, but as explained above, this distinction is irrelevant. Austin has not demonstrated an entitlement to habeas relief.

Austin's two remaining claims can be read to challenge the sufficiency of the evidence. (DE #1 at 3.) In reviewing a disciplinary proceeding for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record,

4

independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). A habeas court will overturn the hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

Here, Officer Spoon described how contraband was found hidden in a crawl space where Austin had been working. (DE #7-1.) Austin does not refute the specifics of Officer Spoon's account, but points out that four other inmates also had access to the crawl space. (DE #1 at 3.) He further claims that he had not been down in the crawl space for approximately 3-4 weeks prior to the date the contraband was found. In his view, he could not have been found guilty because there was no direct evidence that the tobacco was his. However, a hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992). Furthermore, the record need not contain evidence of actual possession of contraband, as long as there is sufficient evidence of constructive possession. *Id.* at 345-46. There is sufficient evidence of constructive possession in this case, since the contraband was found in an area where Austin and only a few other inmates had access to it. *See Hill*,

5

472 U.S. at 457 ("Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *Hamilton*, 976 F.2d at 345-46 (evidence of constructive possession was sufficient, since contraband was found in a location where only the petitioner and three other inmates could have left it); *see also Pigg v. Finnan,* 289 Fed. Appx. 945, 947 (7th Cir. Aug. 18, 2008) ("When only a few inmates have access to the place contraband is found, constructive possession is 'some evidence' sufficient to sustain a disciplinary conviction.").

Austin also argues that he should not have been found guilty because another inmate admitted to trafficking tobacco around the time of this incident. (DE #8 at 3.) There is nothing in the administrative record to support his assertion. Moreover, even if another inmate admitted to trafficking, the hearing officer was not required to credit the truth of this statement, nor would it necessarily exculpate Austin from the charge. The hearing officer could have reasonably concluded that more than one inmate was involved in the trafficking scheme. In any event, weighing the evidence and assessing the relative credibility of the witnesses were tasks for the hearing officer, not this court. *McPherson*, 188 F.3d at 786. To be constitutionally adequate, the evidence does not have to point to only one logical conclusion; the question is whether there is some evidence to support the hearing officer's decision. Based on the record, the court cannot say that the hearing officer's decision was arbitrary or without evidentiary support. *See Hill*, 472

U.S. at 457; *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report alone provided some evidence to support disciplinary determination).

Finally, in his traverse, Austin appears to assert a number of additional claims based on violations of Indiana Department of Correction ("IDOC") policies governing time deadlines and the choice of sanction imposed. (DE #8.) A traverse is not the place to be asserting new claims for the first time. See RULE 2(C)(1) OF THE RULES GOVERNING SECTION 2254 CASES (providing that all grounds for relief must be contained in the petition). Regardless, even if IDOC rules were violated, this would not entitle Austin to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (habeas relief is only available for a violation of the United States Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of IDOC policy in disciplinary proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law").

For these reasons, the petition (DE #1) is **DENIED**.

**SO ORDERED.**

Date: June 11, 2014

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT